**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:23-cr-241 (GMH)** |
| | : | |
| **CINDY YOUNG,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR NEW TRIAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its opposition to the defendant's motion for new trial, ECF No. 80 (the "motion"). The defendant, Cindy Young, has asked the Court for a new trial, alleging juror bias and falsehoods. As explained below, the defendant's claims lack factual and legal support, and thus, her motion must be denied.

**I.     The Jury Was Properly Empaneled and Discharged Their Duties Without Bias or Falsehoods.**

On July 9, 2024, following proposals from the government and the defendant, this Court circulated a set of proposed *voir dire* questions, which included Questions 30–32 (though at the time numerated differently). On July 30, 2024, defendant's counsel acceded to the proposed *voir dire* questions in writing. Moreover, during the August 1, 2024 pretrial conference, the defendant raised no objection to Questions 30–32 let alone suggest that Question 32 was *per se* improper as she does now. *See* ECF No. 80 at 2 ("This final question had the effect of negating all prior *voir dire* questions because no matter what the juror said during *voir dire*, the Court could overrule any motion from the Defense to strike for cause so long as the juror answered affirmatively to question 32").

Between August 5–6, 2024, this Court conducted *voir dire* in the above case. In the morning of August 5, 2024, the Court administered the oath to prospective jurors prior to asking the panel any questions. *See* Tr. 8/5/24 at 18. After swearing in the panel, the Court asked extensive questions to the panel about their possible jury service. *Id.* at 18–28. The Court noted, *inter alia*, that the purpose of the process was to empanel a jury that could "reach a verdict fairly and impartially and based solely upon the admitted evidence and the instructions of law . . . ." *Id.* at 28. While the Court asked a total of 32 questions, questions 30–32 relate to the defendant's motion.

Question 30 asked: "Do you have strong feelings or opinions about former President Donald Trump or people who support him—whether positive or negative—that would make it difficult for you to serve as a fair and impartial juror in this case?"

Question 31 asked: "Do you have strong feelings or opinions about persons who do not accept the validity of the results of the 2020 Presidential Election—whether positive or negative— that would make it difficult for you to serve as a fair and impartial juror in this case?"

Question 32 asked:

Most of you have heard, read about, or seen media coverage of events at the Capitol on January 6, 2021, and you may have thoughts and opinions about those events. It is only natural to have opinions about such events. However, I am going to instruct the jury in this case that every defendant in a criminal case is presumed innocent, and you must presume the defendant innocent throughout the trial unless and until the defendant is proven guilty beyond a reasonable doubt. The burden is on the government to prove the defendant guilty of each element of the offense beyond a reasonable doubt. The defendant does not have to produce any evidence at trial because she is not required to prove her innocence. Nor is the defendant required to prove any fact in dispute in this case. The law requires that jurors weigh the evidence in a case and reach a verdict fairly and impartially and based solely upon the admitted evidence and instructions of law, which I will give to you. That will be your duty as a juror in this case.

So the question is, no matter what you have heard or seen about events at the Capitol on January 6, 2021, and no matter what feelings or opinions you may have formed, do you believe you can put all of that aside and decide this case only on the evidence

2

you receive in court, follow the law that I give you, and decide the case in a fair and impartial manner?

Many prospective jurors who answered yes to Question 30 or 31, nevertheless answered yes to Question 32 and stated that they could ultimately set aside their feelings or opinions and decide the case only on the evidence in a fair and impartial manner. *See, e.g.*, *id.* at 56–61, 106–110.

Beyond generalized criticism of *voir dire*, the defendant has raised issue with Juror 0374 and Juror 0001. Regarding Juror 0374, the defendant argues that because the juror "works for a law firm that filed a brief" about whether former presidents enjoy prosecutorial immunity, he was dishonest and biased. ECF No. 80 at 4. The defendant found about this brief "through publicly available and easily accessible sources." *Id.* However, the defendant did not ask a single follow-up question nor did she move to strike Juror 0374 despite what she now characterizes as easily accessible evidence of bias. *See* Tr. 8/5/24 at 174. However, there is no evidence that Juror 0374 worked on this brief. Moreover, Juror 0374 stated that he could put aside any feelings or opinions he may have previously formed and decide the case in a fair and impartial manner. *See id.* at 172.

Regarding Juror 0001, the juror had previously served on the jury of a January 6-related criminal prosecution. *See id.* at 139. However, she stated "it would not affect [her] ability" to serve in the instant case. *See id.*

## II.  Legal Standard Under Federal Rule of Criminal Procedure 33

Pursuant to Federal Rule of Criminal Procedure 33, a court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. The defendant "is entitled to a fair trial but not a perfect one, for there are no perfect trials." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 553 (1984) (quotations and citations omitted). Motions for a new trial are "not favored and are viewed with great caution." *United States v. Borda*, 786 F. Supp. 2d 25, 31 (D.D.C. 2011) (internal citations omitted). While "[t]rial courts enjoy broad

discretion in ruling on a motion for a new trial," the D.C. Circuit has "held that granting a new trial motion is warranted only in those limited circumstances where 'a serious miscarriage of justice may have occurred.'" *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014) (quoting *United States v. Rogers*, 918 F.2d 207, 213 (D.C. Cir. 1990)).

In *United States v. North*, 910 F.2d 843, 904 (D.C. Cir. 1990) (vacated in part), the D.C. Circuit applied the *McDonough* factors for the first time. In doing so, the Court recognized that an aggrieved party must show a falsehood at *voir dire* that would have "demonstrated actual bias." *Id.* at 904. Consequently, a defendant seeking a new trial based on a juror's statements during *voir dire* "bears the burden of showing that: (1) the Juror failed to answer honestly a material question on *voir dire*; (2) a correct response would have provided a valid basis for a challenge for cause; and (3) the Juror's failure to answer honestly demonstrated actual bias." *United States v. Kelly*, 2023 U.S. Dist. LEXIS 143528, at *14 (D.D.C. Aug. 16, 2023) (citing *McDonough*, 464 U.S. at 556 and *North*, 910 F.2d at 904). Moreover, "the Supreme Court has rejected the proposition that 'a defendant's peremptory challenge right is impaired when he peremptorily challenges a potential juror whom the district court erroneously refused to excuse for cause.'" *United States v. Webster*, 102 F.4th 471, 484 (D.C. Cir. 2024) (citing *United States v. Martinez-Salazar*, 528 U.S. 304, 310 (2000)).

Finally, while the defendant seeks relief though additional hearings, the courts and the law appropriately limit the inquiry into a jury's deliberative process in the event of a subsequent hearing. *See, e.g.*, Fed. R. Crim. P. 606(b)(1) ("[A] juror may not testify about . . . the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment."); *United States v. Stover*, 329 F.3d 859, 865 (D.C. Cir. 2003) (holding that Rule 606(b) "prohibits jurors from giving evidence about any matter pertaining to their verdicts

except extrajudicial influences"); *United States v. Brooks*, 677 F.2d 907, 913 (D.C. Cir. 1982) (affirming trial court's decision not to conduct an evidentiary hearing regarding alleged juror misconduct based on a subconscious memory, because courts should refuse to consider "the mental processes through which [the jurors] arrived at their verdict") (internal citation and quotation omitted). Excluding such inquiries promotes several "values," including, "freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment." Fed. R. Crim. P. 606 cmt. (citing *McDonald v. Pless*, 238 U.S. 264, 268 (1915)).

## III.   The Defendant Has Not Met Her Burden Under The *McDonough* Factors

The crux of the defendant's argument is as follows:

> All jurors who affirmatively admitted to having a bias against Trump supporters and/or people who have questions about the 2020 election, and then also answered that they would be fair and impartial, should have been struck for cause for at least two reasons: (1) their answers to Questions 30 and 31 should have disqualified them, and (2) their inconsistent answer to Question 32 demonstrates that they were either deliberately or at least unknowingly providing a dishonest or misleading answer to the most fundamental and material question. . . . Further, the discovery that at least one juror failed to disclose information that indicated bias against January 6 defendants, at least necessitates a hearing to determine if that juror or others harbored relevant prejudices that were not disclosed and that may have been a cause for the Court to strike, or else would have provided information to the Defendant as to how to allocate her peremptory strikes.

ECF No. 80 at 7–8.

As described below, the defendant fails to meet her burden under the *McDonough* factors for both factual and legal reasons.

### A. The Defendant Has Failed to Show Any Juror Answered Dishonestly to A Material Question On *Voir Dire*

First, the defendant, without evidence, states that it is "obvious" that jurors were dishonest when answering the final *voir dire* question. ECF No. 80 at 1. However, there is a presumption of impartiality afforded to prospective jurors. Jurors "t[ake] their oath" to be honest, and "absent evidence to the contrary, we must presume that they [a]re fair and impartial, as indeed they sw[ear]

to be." *United States v. Khoury*, 901 F.2d 948, 955 (11th Cir. 1990), *opinion modified on denial of reh'g*, 910 F.2d 713 (11th Cir. 1990). Here, the defendant is flabbergasted that prospective jurors could state with honestly their ability to set aside their feelings and opinions and reach a verdict only on the evidence and law. Yet, Question 32 is "the essential question: Can the District's potential jurors 'lay aside [their] impression or opinion' of [the defendant] or events on January 6th and 'render a verdict based on the evidence presented in court'?" *Webster*, 102 F.4th at 480 (citing *United States v. Nassif*, 628 F. Supp. 3d 169, 187 (D.D.C. 2022)). Question 32 is a routine question. The defendant simply does not want to believe the jurors responses. However, this naked disbelief does not prove dishonestly on behalf of the jurors.

Based on information and belief, Question 32, or some form thereof, has been asked in nearly every January 6 case. The question is a typical rehabilitative question that importantly helps determine whether a prospective juror can be impartial. Indeed, Juror 1193 was unable to answer yes to Question 32, and she was appropriately struck for cause. *See* Tr. 8/6/24 at 42. Therefore, not only was Question 32 appropriate but it aided the defendant in empaneling an impartial jury.

Second, the defendant argues that that "one of the jurors works for a law firm that filed a brief" in a case about the former president. ECF No. 80 at 4. The defendant apparently found about this filing "through publicly available and easily accessible sources," *id.*, though presumably "did not raise these additional questions because she was otherwise satisfied with the Court's line of inquiry," *Kelly*, 2023 U.S. Dist. LEXIS 143528, at *19. In fact, the defendant did not even ask a single follow-up question and certainly did not move to strike Juror 0374 despite what is now characterized as easily accessible evidence of bias. *See* Tr. 8/5/24 at 174. Most importantly, the defendant has raised no evidence that this juror worked on the brief in question, assuming *arguendo* the brief's materiality to *voir dire*.

Third, the defendant argues that one juror who had been previously empaneled on another January 6 case "was not being honest when she said she could be impartial because she [had] already made a decision about a similarly situated person in a previous case," and that "[t]here is no need for speculation as to how this juror voted on the previous January 6 case because . . . not a single juror has voted against conviction." ECF No. 80 at 5.

Juror 0001 had previously served on the jury of a January 6-related criminal prosecution. *See* Tr. 8/5/24 at 139. However, Juror 0001 stated "it would not affect [her] ability" to serve in the instant case. *See id.* Given that Juror 0001 is presumed impartial, it strains credulity that this juror was *per se* dishonest as the defendant suggests. Indeed, the juror could have rendered a prior verdict in a January 6 case involving complex conspiracy or assaults against law enforcement— matters clearly dissimilar from the defendant's case. Finally, it is simply false to say that not a single juror has voted against conviction in a January 6-related criminal prosecution. *See, e.g.*, *United States v. Chwiesiuk et al.,* 21-cf-536-ACR, ECF No. 108, Verdict Form (August 11, 2023) (finding of not guilty on Count Three in jury trial); *United States v. Alexander Sheppard*, 21-cr-203-JDB, ECF No. 86, Verdict Form (January 26, 2023) (finding of not guilty on Count Four in jury trial).

**B. The Defendant Has Failed to Show Any Otherwise Valid Basis for A Challenge for Cause**

The defendant suggests that "[a]ffirmative answers to Questions 30 and 31 by themselves should have been sufficient for the Court to strike for cause." ECF No. 80 at 1. This line of argument is well-trodden in this circuit and has been routinely rejected in the January 6 context. *United States v. Webster*, 102 F.4th at 481 ("[T]he political inclinations of a populace writ large say nothing about an individual's ability to serve impartially in adjudicating the criminal conduct of an individual.") (citing *Connors v. United States*, 158 U.S. 408, 414, (1895)).

As Judge Jackson pointed out, "[t]he January 6 cases will not be the first politically or emotionally charged trial in the District of Columbia." *United States v. Garcia*, 2022 U.S. Dist. LEXIS 130890, 2022 WL 2904352, at *6 (D.D.C. Jul. 22, 2022). Ultimately,

> focus on the jury pool's opinion of January 6th and its perpetrators misses the point. We expect jurors to view significant criminal events in their hometown with an unapproving eye, whether it is the January 6th attack on the Capitol, a murder, or an armed robbery spree. Generalized disapproval of criminal conduct—even the specific conduct at issue in a defendant's case—says nothing about a juror's ability to be impartial in deciding whether a particular individual committed a crime or not. What the Constitution forbids is for a juror to hold a firmly entrenched view about an individual defendant's guilt or innocence before the trial starts.

*United States v. Webster*, 102 F.4th at 480.

Moreover, the defendant's analogy to race is inapt. One's negative feelings or opinions about the former president or people who support him or acceptance of the 2020 Presidential Election results is not akin to "repugnant racist views" that cannot be set aside. *See Smith v. Phillips*, 455 U.S. 209, 226-28 (1982) (Marshall, J., dissenting). To the contrary, "such leaning are not, by themselves, evidence that those jurors cannot fairly and impartially consider the evidence presented." *United States v. Gossjankowski*, No. 21-0123 (PLF), 2023 U.S. Dist. LEXIS 13118, at *16 (D.D.C. Jan. 25, 2023) (internal quotation omitted).

Indeed, the only example the defendant provides misses the mark. The defendant argues that one juror was empaneled despite the fact that "they harbored overt prejudices against someone who would wear a MAGA hat." ECF No. 80 at 3. Here, the defendant's characterization of individual *voir dire* is wanting at best. Juror 0185 explained that she runs a group for "black queer women" and that "someone wearing a MAGA hat probably would not have fun" in the group. *See* Tr. 8/5/24 at 118. The defendant's counsel then asked whether "a black queer woman . . . wouldn't wear a MAGA hat?" *See id.* Lacking relevance, the government objected, and this Court sustained the government's objection and ultimately overruled the defendant's motion to strike for cause

because it found that the juror "could set her feeling, however strongly held they may be, to the side and judge this matter fairly and impartial." *See id.* at 119–120. The defendant's claim that she had to expend a peremptory strike to remove the juror due to her prejudice belies the record and is ultimately irrelevant because the "peremptory challenge right is [not] impaired when [s]he peremptorily challenges a potential juror whom the district court erroneously refused to excuse for cause." *Webster*, 102 F.4th at 484 (internal citation and quotation omitted).

### C. Even Assuming Two Jurors Failed to Provide Material Disclosures, The Defendant Has Failed to Show Actual Bias

With respect to Juror 0374 and Juror 0001, even assuming *arguendo* the jurors failed to provide material disclosures, the defendant cannot show actual bias. Regarding Juror 0374, the defendant has presented evidence that he works for a law firm where he had colleagues submit a brief relating to whether former presidents enjoyed prosecutorial immunity. ECF No. 80, Attach. A (filed under seal). There is no evidence that Juror 0374 worked on this matter. Additionally, there is no logical nexus to this highly academic legal brief and the defendant. Even if Juror 0374 worked on the matter, he unequivocally stated that he could put aside any feelings or opinions he may have previously formed and decide the case in a fair and impartial manner. *See* Tr. 8/5/24 at 172. Moreover, the defendant's request for a hearing into this juror should be viewed with deep skepticism as it risks "freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment." Fed. R. Crim. P. 606 cmt.

Finally, regarding Juror 0001, the defendant argues "there was at least some surprise among at least one member of the jury that a juror who had previously served on another January 6 trial was allowed to serve a second time." ECF No. 80 at 6. What the defendant fails to mention is that the surprise came from Juror 0001 herself as relayed by the only juror who remained post-trial to speak with the parties. The juror's surprise is not evidence of bias, however. To the contrary, the

fact that Juror 0001 was empaneled twice shows not one but two Courts and its accompanying counsel trusted her to be impartial.

## IV.    Conclusion

For the reasons described above, the United States respectfully requests that this Court deny the defendant's motion for new trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Pavan S. Krishnamurthy*
PAVAN S. KRISHNAMURTHY
Assistant United States Attorney
D.C. Bar No. 252831
601 D St., NW
Washington, DC 20530
(202) 252-7862
pavan.krishnamurthy@usdoj.gov

*/s/ Rebekah E. Lederer*
REBEKAH E. LEDERER
Assistant United States Attorney
Pennsylvania State Bar No. 320922
601 D St., NW
Washington, D.C. 20530
(202) 252-7012
rebekah.lederer@usdoj.gov